07-0847-cv
Gollomp v. Spitzer

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2008

(Argued: January 13, 2009)                                    Decided: June 8, 2009)

Docket No. 07-0847-cv

BERNARD P. GOLLOMP,

> *Plaintiff-Counter-Defendant-Appellant*,

> -v.-

ELIOT SPITZER, individually and in his official
capacity as Attorney General of the
State of New York, STATE OF NEW
YORK, UNIFIED COURT SYSTEM OF THE
STATE OF NEW YORK, TOWN OF
ORANGETOWN, THOM KLEINER, in his
official capacity as Supervisor for the
Town of Orangetown, BRUCE
MULDOON, ESQ., individually and in his
capacity as Law Clerk, ROCKLAND
COUNTY COURT, ERIC DUBBS,
MICHELLE DUBBS, and SEYMOUR DUBBS,

> *Defendants-Appellees*.

Before: LEVAL, CABRANES, and LIVINGSTON, *Circuit Judges*.

Plaintiff Bernard P. Gollomp appeals from a January 14, 2009 judgment of the United States

District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Judge*), dismissing his

complaint and imposing sanctions on his attorneys.  Plaintiff had alleged that defendants—the State of

New York, several state agencies and departments (including the state judiciary), various state and local

officials (including a former Attorney General and a Law Secretary to a deceased Justice of the New

York State Supreme Court), and plaintiff's neighbors—conspired to deprive plaintiff of his civil rights.

1

We affirm the judgment of the District Court, and write (1) to adopt expressly the District Court's ruling that Eleventh Amendment sovereign immunity bars lawsuits against the New York State Unified Court System, and (2) to explain the particular circumstances that support the District Court's finding of "bad faith" and imposition of sanctions pursuant to 28 U.S.C. § 1927.

Affirmed.

> MADELINE SHEILA GALVIN, Galvin & Morgan, Delmar, NY, *for Plaintiff-Counter-Defendant-Appellant.*
>
> KATHLEEN M. ARNOLD, Assistant Solicitor General (Andrew M. Cuomo, Attorney General of the State of New York, Barbara D. Underwood, Solicitor General, Andrew D. Bing, Deputy Solicitor General, *on the brief*), Office of the Attorney General of the State of New York, Albany, NY, *for Defendants-Appellees.*

JOSÉ A. CABRANES, *Circuit Judge*:

We consider in this opinion (1) whether Eleventh Amendment sovereign immunity bars suits against the Unified Court System of the State of New York, and (2) whether the imposition on plaintiff's counsel of attorneys fees as a form of sanctions pursuant to 28 U.S.C. § 1927 was an abuse of discretion.

## BACKGROUND

Plaintiff Bernard P. Gollomp appeals from a January 14, 2009 judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Judge*), dismissing his second amended complaint and imposing sanctions on his attorneys pursuant to 28 U.S.C. § 1927. Defendants-appellants are the State of New York, the New York State Unified Court System (*i.e.*, New York's state judiciary), several state and local officials (including Elliot Spitzer, the former Attorney General, and Bruce Muldoon, a Law Secretary to a deceased Justice of the New York State Supreme Court), the Town of Orangetown, and several private citizens who are plaintiff's neighbors.

2

**State Court Proceedings**

The controversy underlying this litigation began in 1996, when plaintiff sued his neighbors, defendants Eric and Michelle Dubbs, over alleged damage to plaintiff's property caused by water runoff from the Dubbs's property. On January 13 2000, Justice Robert R. Meehan of the New York State Supreme Court, Rockland County, granted summary judgment in favor of defendants. *See Gollomp v. Dubbs*, No. 3092/96, slip op. at 1 (N.Y. Sup. Ct. Jan. 13, 2000) ("*Gollomp I*"), *reprinted in* Joint Appendix ("J.A.") 97. In May 2001, the Appellate Division affirmed, concluding that "plaintiff failed to raise a triable issue of fact as to whether artificial means were used to divert surface water from the Dubbs' property onto his property, or whether the improvements to their property were made in good faith." *Gollomp v. Dubbs*, 283 A.D.2d 550, 550 (2d Dep't 2001) ("*Gollomp II*"). The New York Court of Appeals denied leave to appeal on September 13, 2001. *See Gollomp v. Dubbs*, 96 N.Y.2d 721, 721 (2001) ("*Gollomp III*").

In September 2005, plaintiff filed a claim against various State entities[1] in the New York Court of Claims,[2] alleging "[c]ontinuing and ongoing violations of laws, rules and regulations, including but not limited to . . . Environmental Conservation Law . . . [the Freshwater] Wetlands [Act] . . . , Highway Law, . . . Public Officers Law, . . . Navigation Law and Transportation Law." Appellees' Special

---

[1] The defendants were the New York State Department of Health, the New York Public Health Council, the New York State Department of Environmental Conservation, the New York State Department of Transportation, the Interstate Commission on the Delaware River Basin, the Interstate Sanitation District, and the Hudson River Valley Greenway Communities Council.

[2] The New York Court of Claims is the exclusive forum among New York's state courts for litigating claims for money damages against New York State. *See* N.Y. Const. Art. VI, § 9 ("The court [of claims] shall have jurisdiction to hear and determine claims against the state or by the state against the claimant or between conflicting claimants as the legislature may provide."); N.Y. Ct. Cl. Act § 8 (2009) ("The state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations, provided the claimant complies with the limitations of this article."); *Morell v. Balasubramanian*, 70 N.Y.2d 297, 300 (1987) ("Since the adoption of the Court of Claims Act [in 1929], the State has been subject to suit for damages, but only in the Court of Claims.").

3

Appendix ("Appellees' S.A.") 29 (Claim ¶ 3).  Plaintiff was represented in the Court of Claims by James E. Morgan, who also represented plaintiff in this action before the District Court. In May 2006, the Court of Claims granted defendants' motion to dismiss principally because plaintiff had not served a copy of his claim on the Attorney General within 90 days of the date of accrual, *see* N.Y. Ct. Cl. Act § 10(3) (requiring that a claim "be filed and served upon the attorney general within ninety days after the accrual of such claim"), which plaintiff alleged was November 22, 1994.  *Gollomp v. State of New York*, No. 2006-030-541, Claim No. 111493, slip op. (N.Y. Ct. Cl. May 22, 2006) ("*Gollomp IV*"), *reprinted in* Appellees' S.A. 33-36.  The Court of Claims added the following observation:

> Additionally, the Claimant does not state a cause of action against the State of New York[ ] by merely alleging that there were "acts or omissions of the Defendants" relative to a laundry list of State and Federal statutes, at some unspecified time and place, nor does the pleading comply with the statutory and regulatory requirements for a pleading justiciable in the Court of Claims.
>
> . . . Indeed[,] from a fair reading of the four corners of the Claim and the vague language contained therein, the Court cannot tell the nature of the Claim, and by what conduct the State is alleged to have caused this Claimant any injury.

*Gollomp IV*, Appellees' S.A. 36.

**Letter to Chief Judge Kaye**

On March 15, 2006, while plaintiff's claim was pending before the New York Court of Claims, plaintiff wrote to Chief Judge Judith S. Kaye of the New York Court of Appeals, alleging that Justice Meehan was "medically incapacitated" at the time he granted summary judgment against plaintiff, and that Justice Meehan's signature on the January 13, 2000 Order was forged.  J.A. 102 (Letter of Bernard P. Gollomp, Mar. 15, 2006, at 1).  Plaintiff attached 35 exhibits to his letter and sent a copy to James E. Morgan of Galvin & Morgan.  On March 30, 2006, Chief Judge Kaye responded through her Counsel that the Chief Judge "may exercise her judicial authority only in cases that . . . are properly before the Court of Appeals," and that plaintiff "h[ad] no case pending before that Court."  J.A. 107 (Letter of Mary C. Mone, Counsel to the Chief Judge, Mar. 30, 2006).  Plaintiff replied in a letter dated April 7, 2006 that Chief Judge Kaye's response was "perplexing," and urged the Chief Judge to "expeditiously

4

handle this violation of [his] Civil Rights." J.A. 106 (Letter of Bernard P. Gollomp, Apr. 7, 2006). Plaintiff's counsel, James Morgan, was copied on his reply.

**Initial Federal Complaint**

Plaintiff commenced a lawsuit in the United States District Court for the Northern District of New York in June 2006—one month after the New York Court of Claims denied his claim. In his initial complaint—which was 61 pages long and contained 493 numbered paragraphs and 22 causes of action, plaintiff alleged violations of his rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments—by all of the defendants-appellees, including the New York State Department of Environmental Conservation, the New York State Department of Health, the County of Rockland, Rockland County Drainage, the Board of Rockland County Soil and Water Conservation District, the Rockland County Clerk, and the Town Attorney for the Town of Orangetown. All of plaintiff's causes of action were brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985(3), and 1986. His theory of the case was that (1) Justice Meehan, who had since passed away, was not mentally competent to render a decision; (2) that Justice Meehan's signature on the January 13, 2000 Order was forged; and (3) that the defendants—including the New York Unified Court System—conspired to cover-up the forgery and deprived plaintiff of his civil rights. So far as we can tell, plaintiff's decision to name the Unified Court System in his complaint was a consequence of his correspondence with Chief Judge Kaye.

Appearing below are two examples of the specific claims made in plaintiff's initial complaint, taken from his third and thirteenth causes of action:

### AS AND FOR A THIRD CAUSE OF ACTION . . .

300.   Pursuant to New York State Constitution Article VII, '8, local governments enact, through their police power establish land use regulations through local zoning codes which are municipal specific.

301.   As set forth herein, Defendants, exercise supra-municipal zoning power through its land use regulation.

5

302. By allowing the Forged Meehan Decision and Order to stand, Defendants effectively engaged in the unconstitutional delegation of authority by allowing the judicial arm of state government to assume what constitutes legislative power in the form of revamping - duly adopted laws, rules and regulations and in the process contravening applicable Home Rule requirements.

303. As a result of those Constitutional violations by Defendants, Gollomp suffered and continues to suffer damage.

304. Plaintiff suffered monetary damage in an amount in excess of Two Million Five Hundred Thousand and 00/100 ($2,500,000.00) Dollars as a result of Defendants' actions.

J.A. 58 (Compl. ¶¶ 300-304) (verbatim).

### AS AND FOR A THIRTEENTH CAUSE OF ACTION . . .

409. Defendants' have deprived Gollomp of the property rights guaranteed to him under and by virtue of the United States Constitution.

410. Defendants, acting under the color of State law, have followed a pattern of conduct designed to intimidate and retaliate against the Gollomp for his attempt to exercise his civil rights.

411. Defendants individually and collectively acted in such a manner as to create a hostile environment, including a hostile home environment in which Gollomp and his family reside.

412. Defendants engaged in and continue to engage in conduct designed to and intended to intimidate and harass Gollomp.

413. Defendants acted singly and in concert conspired and continue to and are conspire to restrict Gollomp's use of his home and property.

414. Defendants' actions complained of herein had caused Gollomp and his family to incur expenses and to suffer physically from anger, frustration, suspicion and concern.

J.A. 70-71 (Compl. ¶¶ 409-14) (verbatim). In addition to these and similar allegations contained in the 22 causes of action, plaintiff also alleged that various government agencies and officials not named as defendants—including the Federal Bureau of Investigation, Senator Charles E. Schumer, Senator Hillary Rodham Clinton, and the Rockland County District Attorney—had not properly investigated his claims of judicial corruption and conspiracy.

**First Amended Complaint**

In August 2006, the "State defendants"—New York State, the Unified Court System, the other named State agencies, and State officials in their official capacities—sent plaintiff's counsel a draft memorandum of law in support of a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure.[3] The State defendants argued in their memorandum that plaintiff had, among other transgressions, asserted frivolous claims that were barred by the Eleventh Amendment and had filed prolix pleadings. Some negotiations between plaintiff and the State defendants ensued and in September 2006, and plaintiff filed a first amended complaint that contained only 12 causes of action and dropped several defendants from the caption. As the District Court observed, the allegations in the first amended complaint were substantially similar to the allegations in the second amended complaint, which is discussed in detail below.

**The November 8, 2006 Teleconference**

Unconvinced that plaintiff's alterations had cured the sanctionable defects in his initial complaint, the State defendants filed a Rule 11 motion on November 3, 2006. On November 8, Magistrate Judge Randolph F. Treece held a teleconference to discuss the motion. During the course of that proceeding, plaintiff's counsel acknowledged that he understood the Eleventh Amendment

---

[3] Rule 11 of the Federal Rules of Civil Procedure states, in relevant part:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2); *see also id.* 11(b) ("By presenting to the court a pleading, . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . ."); *id.* 11(c)(1) ("Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.").

objections raised by the State defendants.[4]  In addition, Magistrate Judge Treece inquired why the State

defendants had filed a motion for sanctions instead of a motion to dismiss pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure.  The following exchange occurred:

> THE COURT: . . . [W]hy aren't you doing this by a 12(b)(6) Motion as opposed to a Rule 11
> Motion?
>
> MS. COSTELLO [counsel for State defendants]: Well, we are doing a Rule 11 Motion because
> we believe that the Plaintiff's attorneys have persistently made these types of allegations against
> the State Defendant, has been sanctioned in the past, and persist in making these allegations,
> and sanctions are warranted.
>
> MR. MORGAN [counsel for plaintiff]: We were not sanctioned in the past, but that's beside
> the point.
>
> MS. COSTELLO: Well, that's not the information we have and there are cases that we can cite
> and have cited in our motion where you have been sanctioned. . . .
>
> MR. MORGAN: That has no [e]ffect on this case.

J.A. 170-71 (Tr. of Proceedings, Nov. 8, 2006, 10:20-11:11).  Later in the conference, plaintiff's counsel

added, "we've faced [Rule 11] motions before; we have always defeated these motions."  J.A. 188 (Tr.

of Proceedings, Nov. 8, 2006, 28:5-6).

---

[4] THE COURT: And had you discussed the Eleventh Amendment with Mr. Morgan?

MR. MORGAN [counsel for plaintiff]: Yes, Your Honor.

THE COURT: And Mr. Morgan, do you understand the Eleventh Amendment and —

MR. MORGAN: Yes, I understand their arguments, but in this case, in the Amended
Complaint we have case law that support the causes of action for each and every cause of
action.
. . . .

THE COURT: Well, I just want to go back.  Mr. Morgan, I mean, if there's been a
discussion about the Eleventh Amendment that you can't sue the State, and you can't sue
State officials, you have to sue them individually; how did you plead against, for example,
Defendant Elliot Spitzer in his official capacity?

MR. MORGAN: In his official capacity for failure to act, failure to perform his duties.

J.A. 172, 174 (Tr. of Proceedings, Nov. 8, 2006, 12:17-25, 14:4-11).

In fact, just seven months earlier, plaintiff's counsel had been sanctioned by the New York State Appellate Division, Third Department, for asserting false material factual statements. *See Korbel v. Zoning Bd. of Appeals of Town of Horicon*, 28 A.D.3d 888, 891 (3d Dep't 2006) (concluding that "plaintiff and his counsel have engaged in conduct that is completely without merit" and "impos[ing] a sanction of $1,000 against plaintiff personally and $1,000 against his counsel, James Morgan" (internal quotation marks omitted)). Seven years earlier, Judge McAvoy of the United States District Court for the Northern District of New York sanctioned plaintiff's counsel pursuant to Rule 11 for asserting frivolous claims against state government entities that were barred by Eleventh Amendment sovereign immunity. *See Gaboury v. Town of Roxbury*, No. 98-CV-1753, 1999 U.S. Dist. LEXIS 5810, at *3-4, 8-16 (N.D.N.Y. Apr. 19, 1999) (imposing sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure upon finding that (1) the firm of Galvin & Morgan "should have been aware of the fundamental subject matter jurisdiction issues imposed by the Eleventh Amendment;" (2) the claims pursuant to § 1983 "lack[ed] . . . factual support for their § 1983 claims against the State defendants;" and (3) claims raised under § 1985(3), like the claims under § 1983, were "frivolous" and "egregious").

In addition, at the time of the November 8 teleconference, plaintiff's counsel was subject to an order to show cause why he should not be sanctioned pursuant to Rule 11 in another case before the District Court. *See Kosich v. N.Y. State Dep't of Health*, No. 06-CV-246, slip op. at 7 (N.D.N.Y. Aug. 21, 2006). That case also involved claims against State defendants that were barred by Eleventh Amendment sovereign immunity. *Id.* at 2-3. Nevertheless, when questioned by Magistrate Judge Treece, who had been alerted to the pending Rule 11 motion by defense counsel, plaintiff's counsel refused to explain the circumstances of the pending motion:

> THE COURT: And let me just ask one other question; you have mentioned that Judge Scullin *sua sponte* has raised a Rule 11[ violation. H]as there been a ruling on that Rule 11, and is that Rule 11 applicable to this case?

> MR. MORGAN: The answer is two-fold, Your Honor. It's pending decision. We responded pursuant to his direction. It's tangentially related, but not directly on point.

9

THE COURT: Okay, so what does that mean?

MR. MORGAN: Not related to this case.

J.A. 185-86 (Tr. of Proceedings, Nov. 8, 2006, 25:24-26:7). In fact, *Kosich* was directly on point. As the District Court explained in that case,

> [T]he Court finds it troubling that Mr. Morgan and Ms. Galvin, despite having practiced in this District for more than twenty-five years, continue to assert claims on behalf of their clients against the State of New York and/or its departments and agencies despite this Court's repeated admonitions and the well-established principles of Eleventh Amendment immunity. . . . Accordingly, the Court hereby directs Mr. Morgan and Ms. Galvin to show cause why they have not violated Rule 11(b)(2) and why, if this Court finds that such a violation has occurred, it should not impose sanctions against them for violating Rule 11(b)(2).

*Kosich*, No. 06-CV-246, slip op. at 6-7.

At the close of the November 8 conference, Magistrate Judge Treece set a schedule for filing a second amended complaint, briefing on an amended on Rule 11 motion, and a motion to dismiss.

**Second Amended Complaint**

Plaintiff filed a second amended complaint on November 15, 2006 alleging ten causes of action—reduced from 22 causes of action in the original complaint and 12 in the first amended complaint—including (1) that Spitzer violated his "affirmative obligation to prevent wrongs conspired to be done" according to several federal statutes; (2) that the Unified Court System—acting through Chief Judge Kaye—did not properly investigate plaintiff's allegations of a forged signature;[5] (3) that all the State defendants "individually and in concert engaged in conduct . . . which violated Plaintiff[']s constitutionally protected rights;" (4) that all defendants violated plaintiff's First Amendment right to petition the courts and defamed him in the process; and (5) that the Dubbs should have known that signatures on the state court orders had been forged.

---

[5] All of plaintiff's claims against the Unified Court System, relating to Chief Judge Kaye's alleged failure to investigate his claims, are based on the exchange of letters with the Chief Judge's chambers in March 2006. *See* J.A. 218-221 (2d Am. Compl. ¶¶ 96-117).

10

**The District Court's Decisions**

On the same day that plaintiff filed his second amended complaint, the State defendants filed a motion to dismiss seeking, for the first time, sanctions in the form of attorney's fees under 28 U.S.C. § 1927.[6]

The District Court held oral argument on all the pending motions on January 26, 2007. In an oral decision from the bench at the close of oral argument, the District Court granted defendants' motions to dismiss the second amended complaint in its entirety and granted the State defendants' request for sanctions pursuant to § 1927. The District Court expanded its reasons for decision in a written Memorandum Decision and Order dated February 5, 2007, *see Gollomp v. Spitzer*, No. 06-cv-802, 2007 U.S. Dist. LEXIS 8524 (N.D.N.Y Feb. 5, 2007) ("*Gollomp V*").

Regarding the remaining "State defendants"—Spitzer and Muldoon, in their official capacities, the State of New York, and the Unified Court System—the District Court concluded that plaintiff's civil rights claims were barred by Eleventh Amendment sovereign immunity. *See id.* at *9-11 (citing *McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001)).[7] The Court dismissed the § 1983 claims against Spitzer and Muldoon in their individual capacities because plaintiff had not specified how either defendant was "personally involved in the alleged violation of his constitutional rights." *Gollomp V*, 2007 U.S. Dist. LEXIS 8524, at *9-14 (citing Fed. R. Civ. P. 12(b)(6)). In the same vein, the Court dismissed claims under §§ 1985(3) and 1986 because "[p]laintiff's complaint is devoid of any specific factual allegations that would support his conclusory assertions that Defendants Spitzer and Muldoon

---

[6] 28 U.S.C. § 1927 states: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

[7] In the alternative, the Court also concluded that the claims against Spitzer and Muldoon, in their official capacities, the State, and the Unified Court System should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim because "states, their agencies and their officers and employees in their official capacities are not 'persons' for purposes of §§ 1983, 1985(3), and 1986." *Gollomp V*, 2007 U.S. Dist. LEXIS 8524, at *12.

conspired against him because of his age," *Gollomp V*, 2007 U.S. Dist. LEXIS 8524, at *16; *see also id.* at *17-18. The Court also concluded that Muldoon was entitled to "absolute judicial immunity" for his role as a Law Secretary. *Id.* at *19 (quoting *Oliva v. Heller*, 839 F.2d 37, 40 (2d Cir. 1988) (extending "absolute judicial immunity" to a law clerk to a federal judge)). The District Court also dismissed all claims against the Town of Orangetown, the Town Supervisor, and the Dubbs for failure to state a claim under Rule 12(b)(6). *Gollomp V*, 2007 U.S. Dist. LEXIS 8524, at *23.

Finally, the District Court ordered plaintiff's counsel to pay the State's attorneys' fees pursuant to § 1927. *Id.* at *29. After acknowledging that § 1927 requires a finding of "bad faith," *id.* at *25, the District Court made three findings in support of imposing statutory sanctions. First, the Court deemed "incredible" the assertion by plaintiff's counsel that they had "researched all legal arguments and made no legal argument that lacked merit." *Id.* at *28. The District Court noted that several courts had already instructed them that similar claims against New York State were barred by the Eleventh Amendment. *Id.* (citing *Salvador v. Lake George Park Comm'n*, No. 98-CV-1987, 2001 U.S. Dist. LEXIS 23465, at *2 (N.D.N.Y Mar. 28, 2001); *Gaboury*, 1999 U.S. Dist. LEXIS 5810, at *3).[8] Second, the District Court found it "unfathomable" that plaintiff's counsel would misrepresent his disciplinary record to Magistrate Judge Treece. *Gollomp V*, 2007 U.S. Dist. LEXIS 8524, at *28. Third, the District Court concluded that plaintiff's counsel persisted in alleging legally unfounded claims despite "ample opportunity in this case to withdraw the[m]." *Id.* at *29. The Court then ordered supplemental briefing on the amount of sanctions.

---

[8] On appeal, defendants point out that, in addition to *Salvador* and *Gaboury*, this Court rejected essentially the same arguments by plaintiff's counsel ten years ago in an unpublished summary order. *See Evans v. N.Y. State Dep't of Health*, Nos. 98-7160, 98-7930, 1999 U.S. App. LEXIS 18151, at *3 (2d Cir. July 30, 1999) (summary order) ("Eleventh Amendment immunity therefore protects all the defendants, including the state employees acting in their official capacity."). *Cf. Franceskin v. Credit Suisse*, 214 F.3d 253, 256 n.1 (2d Cir. 2000) ("Here and elsewhere in this opinion, we cite to cases decided by summary order . . . only as facts rather than as precedents."); 2d Cir. R. 32.1(b) ("Rulings by summary order do not have precedential effect."), *available at* 28 U.S.C. Rules Pamphlet, Pt. I, at 350 (2008).

The State of New York filed a "Bill of Costs" with a proposed order imposing sanctions on February 2, 2007. Although plaintiff was required to respond by February 9, 2007, he waited until February 15 to address the imposition of sanctions in a motion for reconsideration pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.[9] In the motion for reconsideration, plaintiff offered several reasons why his claims were not frivolous, including the following analysis:

> The Attorney General argued [that] this case is totally frivolous, having no merit, and that this is clear from the face of the pleadings before this Court.
>
> Were that the case, then there would have been no need for the extensive legal research and drafting and work recorded by the Attorney General as done on this case and in preparing Defendant's motions made before this Court.

J.A. 448 (Pl.'s Aff. in Supp. of Mot. to Reargue, Feb. 15, 2007, ¶¶ 108-109).

Plaintiff filed his notice of appeal on February 23, 2007—before the District Court (1) quantified the amount of sanctions on plaintiff's counsel, (2) ruled on plaintiff's motion for reconsideration, or (3) entered judgment. By the time we held oral argument in this appeal on January 13, 2009, the District Court had not determined the amount of sanctions, ruled on plaintiff's motion for reconsideration, or entered judgment. On January 14, 2009, the District Court entered a Memorandum Decision and Order denying plaintiff's motion for reconsideration and ordering attorney's fees in the amount of $26,796.00 and costs in the amount of $130.20 pursuant to 28 U.S.C. §

---

[9] Rule 60(b) of the Federal Rules of Civil Procedure states:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

13

1927.  The Clerk of the District Court entered judgment for defendants on the same day.  On January 16, 2009, we ordered supplemental briefing from the parties regarding the District Court's January 14 Memorandum Decision and Order and further directed that the notice of appeal shall be effective as of January 14.  *See* Fed. R. App. P. 4(a)(4)(B)(i) ("If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion [for relief under Rule 60 of the Federal Rules of Civil Procedure]—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered."); *cf. United States v. Owen*, 553 F.3d 161, 165 (2d Cir. 2009) (holding in abeyance an appeal in a criminal case pursuant to Rule 4(b)(3)(B) of the Federal Rules of Appellate Procedure because the notice of appeal had not become effective while a motion for a new trial was still pending before the district court).

Before us now is the entire judgment of the District Court.  We therefore consider not only the February 5, 2007 Order dismissing plaintiff's claims and imposing sanctions, but also the January 14, 2009 Order quantifying sanctions and dismissing plaintiff's motion for reconsideration.

## DISCUSSION

We review *de novo* a district court's grant or denial of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, including decisions based on Eleventh Amendment sovereign immunity.  *See, e.g.*, *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 235 (2d Cir. 2006).

Upon review of the record before us, we agree with the District Court's disposition of plaintiff's civil rights claims substantially for the reasons stated in its February 5, 2007 Order.  The claims against the State defendants—Spitzer and Muldoon, in their official capacities, the State of New York, and the Unified Court System—are barred by the Eleventh Amendment.  *See Gollomp V*, 2007 U.S. Dist. LEXIS 8524, at *9-11.  Plaintiff has failed to state a claim against Spitzer and Muldoon in their individual capacities, the Town of Orangetown, the Town Supervisor, and the Dubbs pursuant to

14

§§ 1983, 1985(3), and 1986. *See id.* at *13-18. In addition, Muldoon is entitled to absolute immunity as a law clerk to a state court judge because he was acting in a judicial capacity. *See id.* at *18-19; *see also Oliva*, 839 F.2d at 40 (holding that a law clerk "who was clearly assisting [a] judge in carrying out judicial functions[ ] was covered by the doctrine of absolute immunity"); *cf. Sheppard v. Beerman*, 317 F.3d 351, 355 (2d Cir. 2003) (commenting, in the context of state court employment, that "in their role as employees, law clerks amount to 'extensions of the judges at whose pleasure they serve'" (quoting *Oliva*, 839 F.2d at 40)).

We take this opportunity to address two aspects of the District Court's decisions in greater detail: (1) the application of Eleventh Amendment sovereign immunity to plaintiff's claims against the Unified Court System of the State of New York, and (2) the District Court's imposition of sanctions pursuant to 28 U.S.C. § 1927.

**Eleventh Amendment Sovereign Immunity**

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI; *see also Woods*, 466 F.3d at 236 (explaining that "[a]lthough the Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has been interpreted also to bar federal suits against state governments by a state's own citizens as well as state court actions against state governments" (citation omitted)). Stated as simply as possible, the Eleventh Amendment means that, "as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity," or unless Congress has "abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Woods*, 466 F.3d at 236. In the instant case, there is no suggestion of congressional abrogation or state acquiescence, and so our inquiry is limited to the

question of whether the New York State Unified Court System is, constructively, "one of the United States," U.S. Const. amend. XI.

As we have previously explained, "[t]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Woods*, 466 F.3d at 236 (internal quotation marks omitted). Accordingly, "a governmental entity is entitled to Eleventh Amendment immunity only if it is more like an arm of the State, such as a state agency, than like a municipal corporation or other political subdivision." *Id.* (internal quotation marks omitted). Courts frequently consider many factors to determine whether an entity is an "arm of the state." *See, e.g.*, *Gorton v. Gettel*, 554 F.3d 60, 62 (2d Cir. 2009) (considering "(1) how the entity is referred to in its documents of origin; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's financial obligations are binding upon the state" (quoting *McGinty*, 251 F.3d at 95-96) (internal quotation marks omitted)). However, the ultimate inquiry involves an overall assessment of "the relationship between the State and the entity in question." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). A cardinal component of this relationship is "the question whether a money judgment against a state instrumentality or official would be enforceable against the State." *Id.* at 430; *see also Gorton*, 554 F.3d at 62 (inquiring, after an assessment of other factors, "whether a suit against the entity in federal court would threaten the integrity of the state and expose its treasury to risk," and stating that "[i]f the answer is . . . in doubt, a concern for the state fisc will control" (internal quotation marks omitted)); *Woods*, 466 F.3d at 238 (observing that "a claim of Eleventh Amendment immunity will occasion serious dispute only where a relatively complex institutional arrangement makes it unclear whether a given entity ought to be treated as an arm of the state" (internal quotation marks omitted)).

So far as we can observe, every court to consider the question of whether the New York State

16

Unified Court System is an arm of the State has concluded that it is, and is therefore protected by Eleventh Amendment sovereign immunity. Our Court has previously reached this conclusion in two unpublished decisions. *See Davis v. New York*, 106 Fed. App'x 82, 83 (2d Cir. 2004) (summary order) ("Specifically, we affirm the district court's holding that the Eleventh Amendment bars [plaintiff's] claims against the State of New York, the New York State Unified Court System, and [individual defendants] in their official capacities."); *Kampfer v. County of Fulton*, Nos. 94-9110, 94-9201, 1997 U.S. App. LEXIS 653, at *3 (2d Cir. Jan. 15, 1997) (summary order) ("The County Court of the State of New York is an integral part of the State's Unified Court System, *see* N.Y. Const. Art. VI, §§ 1 & 10-11, and as such is an arm of the State of New York."). Other courts in this Circuit have routinely concluded that the Eleventh Amendment shields the Unified Court System from civil liability. *See, e.g.*, *Pennefather v. N.Y. State Unified Court Sys.*, No. 08 Civ. 0098, 2008 U.S. Dist. LEXIS 43460, at *6 (S.D.N.Y. June 3, 2008) ("It is apparent that Defendant, [the New York State Unified Court System], is entitled to immunity from suit under the Eleventh Amendment . . . ."); *Gollomp V*, 2007 U.S. Dist. LEXIS 8524, at *9 ("Defendant Unified Court System is an arm of the state for purposes of the Eleventh Amendment."); *Darcy v. Lippman*, No. 03 CV 6989, 2006 U.S. Dist. LEXIS 91893, at *10 (S.D.N.Y. Dec. 19, 2006) ("[T]he Court lacks subject-matter jurisdiction over Plaintiff's ADA and ADEA claims against New York and [the Unified Court System] (which is an arm of the State of New York)."); *Bland v. New York*, 263 F. Supp. 2d 526, 534 (E.D.N.Y. 2003) ("The Eleventh Amendment renders [the Unified Court System Office of Court Administration] and the State immune from suit here under § 1983 or under state law because the State of New York has not consented to suit in federal court, and because no express override of State statutory authority has been enacted by Congress in association with § 1983.").

Nevertheless, plaintiff contends that the "District Court improperly concluded [that] the Eleventh Amendment barred all Plaintiff's claims against the [New York] State Unified Court System."

17

Appellant's Br. 1.  Other than another blanket assertion that the scope of Eleventh Amendment

sovereign immunity "is not cast in stone" and "is subject to revisiting and reconsider[ation] at all levels

of review," Appellant's Br. 33, plaintiff has not provided any basis for maintaining his position.[10]

Indeed, the prior decisions of courts in this Circuit indicate that, as often as the question has been

revisited, the answer has been the same: the New York State Unified Court System is immune from

suit.

The Unified Court System is specifically authorized by the Constitution of the State of New

York.  *See* N.Y. Const. Art. VI, § 1(a) ("There shall be a unified court system for the state."); *see also*

*Gorton*, 554 F.3d at 62 (considering, among other factors, "how the entity is referred to in its documents

of origin" (internal quotation marks omitted)).  Its "function is traditionally one of . . . state

government," *Gorton*, 554 F.3d at 62 (internal quotation marks omitted), and it is funded principally

through State funds, *see* N.Y. Const. Art. VI, § 29(a) ("The legislature shall provide for the allocation of

the cost of operating and maintaining the court of appeals, the appellate division of the supreme court

---

[10] Plaintiff made the same "set in stone" argument before the District Court and to other courts in prior lawsuits against the State of New York.  As the District Court observed:

> The Court notes that Plaintiff's argument that Eleventh Amendment jurisprudence is in a state of "flux" is without merit.  As Judge McAvoy noted in *Gaboury v. Town of Roxbury*, No. 98-CV-1753, 1999 U.S. Dist. LEXIS 5810, 1999 WL 244829 (N.D.N.Y. Apr. 19, 1999), a case in which Plaintiff's counsel represented the plaintiff, Eleventh Amendment immunity "is not a mercurial area of law, but has been definitively settled by the Supreme Court since 1890 with respect to actions against the state itself, . . .[] and 1945 with respect to actions against state agencies or state officials named in their official capacity. . . ." 1999 U.S. Dist. LEXIS 5810, at *3 (internal citations omitted).

*Gollomp V*, 2007 U.S. Dist. LEXIS 8524, at *11 n.4 (brackets omitted, others added).  As we noted above, plaintiff's counsel was sanctioned by the District Court in *Gaboury* for ignoring "the fundamental subject matter jurisdiction issues imposed by the Eleventh Amendment."  1999 U.S. Dist. LEXIS 5810, at *3.  Fully ten years later, plaintiff's attorneys remain unpersuaded that New York State enjoys sovereign immunity from civil claims brought in federal court.  The relentlessness of plaintiff's counsel brings to mind the words of Winston Churchill, "never give in, never give in—never, never, never, never—in nothing, great or small, large or petty—never give in," only without Churchill's final caveat, "except to convictions of honour and good sense." *Never give in! The Best of Winston Churchill's Speeches* 307 (Winston S. Churchill, ed., 2003) (Address at Harrow School, October 29, 1941).

in each judicial department, the supreme court, the court of claims, the county court, the surrogate's court, the family court, the courts for the city of New York established pursuant to section fifteen of this article and the district court, among the state, the counties, the city of New York and other political subdivisions."). Accordingly, a lawsuit against the Unified Court System is "in essence one for the recovery of money from the state, [so that] the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit." *Regents of the Univ. of Cal.*, 519 U.S. at 429 (internal quotation marks omitted); *see also Gorton*, 554 F.3d at 62 (considering, among other factors, "how the entity is funded" and stating that a "concern for the state fisc will control" (internal quotation marks omitted)). For these reasons, we hold that the New York State Unified Court System is unquestionably an "arm of the State," *Woods*, 466 F.3d at 236, and is entitled to Eleventh Amendment sovereign immunity.

**Sanctions**

"We review all aspects of a district court's decision to impose sanctions—whether under 28 U.S.C. § 1927 or the court's inherent power—for abuse of discretion." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000); *cf. Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." (internal citations, alterations, and quotation marks omitted)).

As the District Court observed, 28 U.S.C. § 1927 authorizes sanctions "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," and upon "a finding of conduct constituting or akin to bad faith." *60 E. 80th St. Equities, Inc. v. Sapir* (*In re 60 E. 80th St. Equities, Inc.*), 218 F.3d 109, 115 (2d Cir. 2000) (internal quotation marks omitted). In addition to the substantive requirement of "bad faith," we have imposed a procedural requirement of notice and an opportunity to be heard. *See id.* at 117

19

(requiring notification of "(1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered," but stating that, depending on the circumstances, "a full evidentiary hearing is not required[, and] the opportunity to respond by brief or oral argument may suffice" (internal quotation marks omitted)).

Plaintiff's counsel do not argue that the sanctions imposed on them were procedurally flawed. Instead, they assert that (1) they lacked bad faith, (2) their claims were not frivolous, (3) defendants improperly threatened "sanctions as a litigation tactic," Letter of James E. Morgan, Galvin & Morgan, Counsel for Plaintiff, Jan. 22, 2009, at 5, and (4) sanctions will have a chilling effect on unpopular claims that have a legitimate legal basis. We address each of these arguments below.

**1. Bad Faith**

As discussed above, the District Court made three findings of "conduct constituting or akin to bad faith," *In re 60 E. 80th St. Equities*, 218 F.3d at 115: (1) the "incredible" assertion by plaintiff's counsel that they had "researched all legal arguments and made no legal argument that lacked merit," despite prior warnings not to bring claims against New York State that were barred by the Eleventh Amendment, *Gollomp V*, 2007 U.S. Dist. LEXIS 8524, at *28; (2) the "unfathomable" misrepresentation by plaintiff's counsel to Magistrate Judge Treece regarding counsel's disciplinary record, *id.*; and (3) plaintiff's counsel's persistence in asserting specious claims despite "ample opportunity . . . to withdraw the[m]," *id.* at *29. The record before us ably supports all three of the District Court's findings of conduct that amounted to bad faith.

First, the record demonstrates that several courts had already instructed plaintiff's counsel that similar claims against New York State were barred by the Eleventh Amendment. *See Gollomp V*, 2007 U.S. Dist. LEXIS 8524, at *28. The District Court cited two cases—*Salvador*, 2001 U.S. Dist. LEXIS 23465, at *2, and *Gaboury*, 1999 U.S. Dist. LEXIS 5810, at *3—in which plaintiff's counsel were specifically instructed that New York State enjoyed sovereign immunity from suit. In *Gaboury*, in which

20

plaintiff's counsel was fined $250 for bringing frivolous claims, Judge McAvoy explained at length that Eleventh Amendment sovereign immunity "is not a mercurial area of law, but has been definitively settled by the Supreme Court since 1890 with respect to actions against the state itself, and 1945 with respect to actions against state agencies or state officials named in their official capacity." 1999 U.S. Dist. LEXIS 5810, at *8 (internal citation omitted). Nonetheless, plaintiffs persisted in bringing claims against the State of New York that were unquestionably barred by Eleventh Amendment sovereign immunity.

We take judicial notice that plaintiff's counsel has filed other lawsuits in the Northern District of New York containing claims that were clearly barred by the Eleventh Amendment. *See, e.g.*, *Motorola Credit Corp. v. Uzan*, __ F.3d. __, No. 07-2076-cv, 2009 U.S. App. LEXIS 6970, at *8 (2d Cir. Mar. 31, 2009) (taking judicial notice of related proceedings). In *Kosich*, which was decided in August 2006, Judge Scullin dismissed a complaint filed by plaintiff's counsel because all of the claims against New York State, the New York State Department of Health, and the Bureau of Professional Medical Conduct were barred by Eleventh Amendment sovereign immunity. *See Kosich*, No. 06-CV-246, slip op. at 3-4. The Court further ordered plaintiff's counsel to show cause why they should not be sanctioned pursuant to Rule 11 after finding that (1) plaintiff's counsel failed to make a reasonable inquiry into whether the claims alleged in the complaint were legally cognizable, and (2) were sanctioned for bringing frivolous claims against New York State in the past. *Id.* at 5-7. In addition, this Court stated ten years ago—in another case from the Northern District of New York brought by plaintiff's counsel—that "Eleventh Amendment immunity . . . protects [State] defendants, including the state employees acting in their official capacity." *Evans*, 1999 U.S. App. LEXIS 18151, at *3 (summary order).

Second, the record supports the District Court's finding that it was "unfathomable" for plaintiff's counsel to misrepresent his disciplinary record to Magistrate Judge Treece during the

21

November 8, 2006 teleconference. *Gollomp V*, 2007 U.S. Dist. LEXIS 8524, at \*28. Plaintiff's counsel misrepresented his record three times. After initially stating that "[w]e were not sanctioned in the past," J.A. 170-71 (Tr. of Proceedings, Nov. 8, 2006, 10:21-11:11), plaintiff's counsel later represented that his firm had "faced [Rule 11] motions before; [and] . . . ha[d] always defeated these motions," J.A. 188 (Tr. of Proceedings, Nov. 8, 2006, 28:5-6). In addition, upon questioning by the Court, plaintiff's counsel stated that the Rule 11 motion then pending before the District Court in *Kosich* was "not directly on point" and "[n]ot related to this case." J.A. 185-86 (Tr. of Proceedings, Nov. 8, 2006, 25:44-26:7). As the District Court found, these assertions are flatly contradicted by the record.

In August 2006—three months before the teleconference with Magistrate Judge Treece—the District Court ordered plaintiff's counsel to show cause why they should not be sanctioned pursuant to Rule 11 for filing frivolous claims that were barred by the Eleventh Amendment. *See Kosich*, No. 06-CV-246, slip op. at 3-4. The District Court stated unambiguously that it was entertaining sanctions against plaintiff's counsel for "continu[ing] to assert claims on behalf of their clients against the State of New York and/or its departments and agencies despite this Court's repeated admonitions and the well-established principles of Eleventh Amendment immunity." *Id.* at 6-7. Contrary to plaintiff's representation, this was the very same issue raised in the State defendants' Rule 11 motion in this case.

In April 2006—seven months before the teleconference with Magistrate Judge Treece—the Appellate Division, Third Department levied a $1,000 sanction against plaintiff's counsel for making misrepresentations to the court in a zoning dispute. *See Korbel*, 28 A.D.3d at 891 ("Ordered that the appeal is dismissed, as moot, with costs, defendants' request for sanctions is granted and sanctions in the amount of $1,000 *each* are imposed against plaintiff *and plaintiff's counsel* pursuant to 22 NYCRR 130-1.1 . . . ." (emphases added)).

In April 1999—seven years before the teleconference with Magistrate Judge Treece—Judge McAvoy expressly sanctioned plaintiff's counsel pursuant to Rule 11. *See Gaboury*, 1999 U.S. Dist.

22

LEXIS 5810, at *4 (noting that the Court "ordered the Galvin & Morgan Firm to show cause why sanctions should not be imposed pursuant to Rule 11"); *id.* at *11 (finding that "[t]he Galvin Firm also has neglected to learn from its past failures"); *id.* at *14 ("find[ing] that sanctions are appropriate" because "the Galvin Firm did not conduct an objectively reasonable analysis of whether the State Defendants were amenable to suit in this Court in light of the Eleventh Amendment"); and *id.* at *15-16 (ordering "James E. Morgan and Madeline Sheila Galvin, the members of the Galvin and Morgan Firm who signed the papers submitted to this Court, to each complete eight hours of a state-approved continuing legal education course on Federal Practice or Federal Civil Rights Litigation and . . . to remit a total of two hundred fifty dollars ($250.00) to the *pro bono* fund of the Northern District of New York").

Third, the record demonstrates that plaintiff's counsel persisted in alleging legally unfounded claims despite "ample opportunity in this case to withdraw the[m]." *Gollomp V*, 2007 U.S. Dist. LEXIS 8524, at *29. Upon reviewing the initial complaint, State defendants promptly warned plaintiff's counsel that they intended to file a Rule 11 motion if the causes of action barred by the Eleventh Amendment were not withdrawn. At the November 8, 2006 teleconference, Magistrate Judge Treece attempted to explain that the Eleventh Amendment precluded many of the claims alleged in the first amended complaint. Nonetheless, plaintiff's counsel signed the second amended complaint, which contained multiple claims that were barred by the Eleventh Amendment. Plaintiff's failure to correct these deficiencies, combined with their other conduct, satisfies the "bad faith" requirement in § 1927 and supports the District Court's decision to impose sanctions under that statute.

In addition to the three findings made by the District Court, our own review of the record reveals additional support for a determination of "bad faith." Since plaintiff's counsel became involved in this litigation, courts have commented that they have brought claims that are incomprehensible—legally or otherwise. As the New York Court of Claims observed in May

23

2005—before this litigation moved into federal court—the claims pursued by plaintiff's counsel were nothing more than a recounting of "acts or omissions of the [State] Defendants relative to a laundry list of State and Federal statutes, at some unspecified time and place," such that the Court could not "tell the nature of the Claim, and by what conduct the State is alleged to have caused this Claimant any injury." *Gollomp IV*, Appellees' S.A. 36. The initial complaint filed in the instant action was equally incomprehensible. For example, we are at a loss to discern—as any defending party would be—what plaintiff meant by allegations that the various defendants collectively "engaged in the unconstitutional delegation of authority by allowing the judicial arm of state government to assume what constitutes legislative power in the form of revamping duly adopted laws, rules and regulations and in the process contravening applicable Home Rule requirements," causing plaintiff "$2,500,000" in damages. J.A. 58 (Compl. ¶¶ 302, 304). Even less clear is how "Defendants," who included the New York state judiciary, the former Attorney General, and various departments and agencies, "individually and collectively acted in such a manner as to create a hostile environment, including a hostile home environment in which Gollomp and his family reside . . . caus[ing] Gollomp and his family to incur expenses and to suffer physically from anger, frustration, suspicion and concern." J.A. 71 (Compl. ¶¶ 410, 414). The State defendants have had to rebut these and similarly vague claims for years.

We also note that plaintiff's counsel have been repeatedly admonished for the extreme length of their pleadings. *See, e.g., Kosich*, No. 06-CV-246, slip op. at 1 n.1 (noting that plaintiff's complaint was "eighty-two pages in length and include[d] 440 separately-numbered paragraphs and twenty-one causes of action"); *Glasheen v. City of Albany*, No. 98-cv-1503, 1999 U.S. Dist. LEXIS 19689, at *2-3 (N.D.N.Y Dec. 16, 1999) (finding that the complaint, which was 74 pages and contained 445 paragraphs and 18 causes of action, "is rife with irrelevant information and prolix in the extreme," and "admonish[ing] Plaintiff's counsel, James E. Morgan of Galvin & Morgan, against refiling a complaint in this action that still contains irrelevant background information and fails to make a connection between the causes

24

of action and facts asserted in the complaint"); *Gaboury*, 1999 U.S. Dist. LEXIS 5810, at \*13 n.5 ("In fact, [Rule 8 of the Federal Rules of Civil Procedure] places an obligation upon the Galvin Firm to submit 'a short and plain statement of the claim,' not a 103 page, 669 paragraph long conspiracy theory novel."). Although the District Court did not cite the pleadings in this case as a reason for awarding sanctions, we observe that the initial complaint in this case—weighing in at 61 pages and containing 493 numbered paragraphs and 22 causes of action—was similarly prolix. Although the second and third iterations of the complaint were shorter, there is simply no justification for ignoring prior instructions to submit pleadings containing "short and plain statement[s] of the claim[s] showing that the pleader is entitled to relief," Fed R. Civ. P. 8(a)(2).

**2. Frivolous Claims**

Plaintiff offers several explanations of why his claims are not frivolous, none of which are persuasive. First, plaintiff argues before our Court, as he did before the District Court, that his claims could not have been frivolous because the State defendants undertook substantial efforts to defend themselves. *See, e.g.*, J.A. 448 (Pl.'s Aff. in Supp. of Mot. to Reargue, Feb. 15, 2007, ¶¶ 108-109) (arguing that, had plaintiff's claims *actually* been frivolous, "there would be no need for the extensive legal research and drafting and work . . . [in] preparing Defendants' motion[s] made before this Court"); Appellant's Br. 41 ("Either the legal research hours were unnecessary if the case were totally frivolous, or there was a valid basis and legal arguments the AG had to address."). We disagree. Frivolous claims require a defending party to expend time and resources on needless litigation. Plaintiff's argument illustrates the need for attorney's fees as a form of sanctions; it does not explain why the claims in the instant case were non-frivolous.

Plaintiff has also asserted that his claims are not frivolous because the Eleventh Amendment is not static. Rather, according to plaintiff, sovereign immunity is an evolving field of jurisprudence. Plaintiff cites many cases to support this theory, but none of them are on point. For example, he

25

supplies multiple citations to cases concerning qualified immunity that have no bearing on the issue of Eleventh Amendment sovereign immunity. *See* Appellant's Br. at 34-35. Later in his brief, plaintiff refers to "principles of law clearly enunciated by Judge Munson" in *Thompson v. New York*, 487 F. Supp. 212 (N.D.N.Y. 1979), which concerns the ongoing dispute between certain counties in upstate New York and the Oneida Indian Nation. In that case, Judge Munson recognized that "§ 1983 was not intended to create a waiver of a State's Eleventh Amendment immunity merely because an action could be brought under that section against state officers, rather than against the State itself," *id.* at 221 (internal quotation marks and alteration omitted), and that "a State is not a 'person' within the meaning of the statute," *id.* at 226. Accordingly, Judge Munson dismissed claims against the "State of New York, State Police Department, and the Superintendent of State Police . . . in his official capacity." *Id.* at 226. Although Judge Munson suggested thirty years ago that, were he writing on a clean slate, he would conclude that Congress overrode the states' sovereign immunity in the Civil Rights Act of 1871, *see id.*, he acknowledged that the Supreme Court had roundly rejected his view. *See id.*; *see also Quern v. Jordan*, 440 U.S. 332, 342 (1979) ("[N]either logic, the circumstances surrounding the adoption of the Fourteenth Amendment, nor the legislative history of the 1871 Act compels, or even warrants, a leap . . . . to the conclusion that Congress intended by the general language of the Act to overturn the constitutionally guaranteed immunity of the several States."). We fail to see how *Thompson* or any of the qualified immunity cases cited by plaintiff's counsel demonstrate that the State of New York does not possess sovereign immunity.

We are left, then, with plaintiff's bare assertion that sovereign immunity does not bar his claims against New York State. On this basis, we must agree with the District Court that the claims brought by plaintiff in this lawsuit were not well researched and were frivolous "in light of the well-established case law addressing the federal civil rights statutes and Eleventh Amendment jurisprudence, to say nothing of the numerous times that the judges in th[e Northern] District have instructed [plaintiff's

26

counsel] about the relevant principles in these areas of the law." *Gollomp V*, 2007 U.S. Dist. LEXIS 8524, at *28.

### 3. Threat of Sanctions as a Litigation Tool

Plaintiff argues that the "[u]se of sanctions as a litigation tactic, as consistently employed by the State, is improper," Letter of James E. Morgan, Galvin & Morgan, Counsel for Plaintiff, Jan. 22, 2009, at 5, and that the State defendants made "irrelvant arguments thereby evading the real matters at issue [*i.e.*, the alleged forgery]," Appellant's Br. 42. In light of the pattern of litigation described above, including previous sanctions in state and federal courts for bringing baseless claims, we find nothing improper in the State's request to recover reasonable attorney's fees from plaintiff's counsel as a form of sanctions.

### 4. "Chilling Effect"

We take seriously plaintiff's argument that the imposition of sanctions has the potential to create a "chilling effect" on legitimate claims. As we have previously observed,

> Any regime of sanctions for a lawyer's role in the course of representing a client inevitably has implications for the functioning of the adversary process. If the sanction regime is too severe, lawyers will sometimes be deterred from making legitimate submissions on behalf of clients out of apprehension that their conduct will erroneously be deemed improper. On the other hand, if the sanction regime is too lenient, lawyers will sometimes be emboldened to make improper submissions on behalf of clients, confident that their misconduct will either be undetected or dealt with too leniently to matter.

*In re Pennie & Edmonds LLP*, 323 F.3d 86, 90-91 (2d Cir. 2003). To be clear, we take no position on whether plaintiff's *concerns* are frivolous. There is every indication that he believes them sincerely, *see, e.g.*, Appellant's Br. 45 ("[Plaintiff] is personally upset and more than a little concerned. . . . In the post-Watergate-Iran Contra-Iraq Invasion days, no one can state [that] something of the type [plaintiff] documented cannot happen."), and neither this Court nor the District Court has based its decisions on the merits of plaintiff's case. We limit our consideration to plaintiff's *claims*, *i.e.*, his legal arguments, and the conduct of his counsel during the course of this litigation. We are confident that nothing in

this opinion or in the District Court's February 5, 2007 Order can or should be read to discourage the prosecution of legitimate *claims* in federal court. Had plaintiff's counsel presented a reasoned basis for challenging long-standing Eleventh Amendment jurisprudence; had they at least argued that they were challenging a well-established rule in order to preserve the issue for appeal to the Supreme Court; had they taken advantage of opportunities to remove baseless claims from their complaints; and had they not grossly misrepresented their disciplinary record to the District Court, we would not have occasion to consider sanctions against them.

Plaintiff's counsel has been repeatedly warned about the perils of frivolous and vexatious litigation. In light of the foregoing, we have no basis to conclude that the District Court's imposition of sanctions pursuant to § 1927 was an abuse of discretion.

\* \* \*

A final word is in order. It is an unpleasant task to sanction attorneys. The members of this panel were all practicing lawyers before we joined the bench, and we are keenly aware of the sting—both financial and reputational—that accompanies a court-ordered reprimand. Nevertheless, the rules and statutes that authorize sanctions exist by necessity and for good reason, as the instant case ably illustrates. For over a decade, the judges of the United States District Court for the Northern District of New York—not to mention our judicial colleagues in the New York Court of Claims, the New York Supreme Court, and the Appellate Division of the Supreme Court—have patiently heard successive lawsuits in which plaintiff's counsel have asserted the same stale claims against the State of New York. A private litigant forced to defend against similar claims year after year would certainly deserve some protection from the courts against future harassment. The State of New York deserves no less consideration.

## CONCLUSION

For the foregoing reasons, the January 14, 2009 judgment of the District Court is

**AFFIRMED**.

Pursuant to Rule 39 of the Federal Rules of Appellate Procedure,[11] the costs of this appeal are taxed against plaintiff-appellant.

---

[11] Rule 39 of the Federal Rules of Appellate Procedure states, in relevant part, "if a judgment is affirmed, costs are taxed against the appellant."  Fed. R. App. P. 39(a)(2).