**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-2181**

ADRIS ABDUS-SHAHID; BAIYINA JONES,

        Plaintiffs - Appellants,

    v.

MAYOR AND CITY COUNCIL OF BALTIMORE,

        Defendant – Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  J. Frederick Motz, Senior District
Judge.  (1:15-cv-01972-JFM)

Submitted:  October 6, 2016      Decided:  January 4, 2017

Before SHEDD, AGEE, and WYNN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Jennifer S. Lubinski, LAW OFFICE OF JENNIFER S. LUBINSKI,
Columbia, Maryland, for Appellants.  Nicholas C. Sokolow,
Assistant Solicitor, BALTIMORE CITY DEPARTMENT OF LAW,
Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Idris Abdus-Shahid and Bayina Jones appeal the district court's dismissal of their claims against the Mayor and City Council of Baltimore ("the City"). Abdus-Shahid's[1] Complaint alleged violations of state and federal law based upon the City's policy of requiring its employees to submit proof of their recorded civil marriage certificate in order to establish a spouse as eligible for health insurance coverage. For the reasons that follow, we affirm the judgment of the district court dismissing the Complaint.

I.[2]

In 1998, Abdus-Shahid and Jones were married in an Islamic ceremony performed in Baltimore, Maryland. They are Muslims who, as part of their faith, "believe that their relationship is governed by Islamic law and that a civil, or secular, marriage license is both unnecessary to their union and contrary to their

---

[1] For simplicity, when referring to Abdus-Shahid and Jones as parties in this case, the opinion will refer to them collectively as "Abdus-Shahid."

[2] Because the district court decided the case on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, we "assum[e] all well-pleaded, nonconclusory factual allegations in the" Complaint and attached exhibits are true. Burnette v. Fahey, 687 F.3d 171, 180 (4th Cir. 2012); see also Tallabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (discussing use of exhibits attached to a complaint).

religious beliefs." App. 6, ¶ 7. Accordingly, they did not obtain a civil marriage license prior to their religious ceremony, nor have they obtained a civil marriage certificate.

In 2008, Abdus-Shahid began working as a civil engineer for the City's Department of Transportation. As part of his employment, Abdus-Shahid was provided the opportunity to participate in the City's health insurance program, including coverage for his spouse and children. He enrolled Jones and their children without objection for several years.

In 2013, after a city-wide audit of the City's employee health insurance program, the City revoked Abdus-Shahid's family health insurance coverage. Although Abdus-Shahid was subsequently allowed to re-enroll his children, the City refused to allow him to re-enroll Jones because he could not "provide an 'Official Court-Certified State Marriage Certificate (must be Certified and dated by the appropriate state or County official, such as the Clerk of Court) From [sic] the court in the County or City in which the marriage took place'" ("the policy"). App. 7-8, ¶ 16. Abdus-Shahid attempted to file his religious marriage certificate with the Clerk of the Baltimore Circuit Court, but the Clerk refused to accept it for recording because it was not a civil license and had not been obtained from the Clerk prior to the ceremony. In August 2014, Abdus-Shahid filed a charge of religious discrimination with the Baltimore

3

Community Relations Commission, the City's equivalent of the federal Equal Employment Opportunity Commission (EEOC), and also with the EEOC ("EEOC charge"). Abdus-Shahid listed the "particulars" of his charge as follows:

> I. . . . In or about July 2013, an audit was conducted which resulted in my family being dropped from my health insurance without explanation. . . . When I completed the forms to [re-enroll] my family, I was informed my Islamic marriage is not recognize[d]; therefore, I have been unable to reinstate my wife to my health insurance plan. . . . I am aware of another employee who is experiencing the same issue.
>
> II. I have been given no explanation for the employer's actions.
>
> III. I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, regarding benefits because of my religion, Muslim.

App. 18.

After receiving a letter from the EEOC dismissing the investigation and informing Abdus-Shahid of his right to sue, he filed a complaint in the Circuit Court for Baltimore City. The City removed it to the United States District Court for the District of Maryland. The Complaint alleges three claims: (1) infringement of the free exercise of religion, in violation of the First and Fourteenth Amendments of the U.S. Constitution; (2) deprivation of religious freedom and due process, in violation of Articles 24 and 36 of the Maryland Constitution's

4

Declaration of Rights; and (3) religious discrimination with respect to the compensation, terms, conditions, and privileges of employment, in violation of Title VII, as amended.

The Complaint sought a declaratory judgment that the City's refusal to recognize Abdus-Shahid's marriage violates the U.S. Constitution and Maryland Declaration of Rights, an order directing the City to recognize his marriage ("and the lawful marriages of other Muslims whose marriage certificates have not been recorded by a clerk of the court"), and other monetary damages, costs, and fees. App. 8-13.

The City moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the constitutional claims should be dismissed because the City's policy was facially neutral and did not prohibit the free exercise of religion; the state-law claims should be dismissed because Abdus-Shahid failed to follow the requisite statutory notice provisions to bring suit; and the Title VII claim should be dismissed because the Complaint did not allege any evidence of intentional discrimination.

In response, Abdus-Shahid contended he had sufficiently pled each claim. Citing the fundamental constitutional right to marry and to exercise his religious beliefs, he argued the City's policy served no legitimate purpose and was not a neutral law of general applicability. Furthermore, Abdus-Shahid claimed

5

the policy imposed an unfair burden on religious adherents of any faith who sought religious rather than civil marriages. He also asserted his state-law claims were not subject to the statutory notice provisions because he only sought declaratory relief. In the alternative, he asserted substantial compliance with any state-law requirements. Lastly, Abdus-Shahid maintained that his Title VII claim alleged disparate impact discrimination rather than intentional discrimination and thus should be allowed to proceed.

The district court granted the City's motion to dismiss as to all claims. It held that the City's policy "is neutral on its face," and "is reasonable since it provides a common standard by which to determine whether spouses should be afforded health insurance coverage." App. 39. It also concluded Abdus-Shahid's state-law claims were barred by the Maryland Local Government Tort Claims Act ("LGTCA"), which applied because he sought more than declaratory relief. And it held Abdus-Shahid's Title VII claim based on disparate impact could not proceed because he had not exhausted his administrative remedies as to that claim.

Abdus-Shahid noted a timely appeal, and we have jurisdiction under 28 U.S.C. § 1291.

6

II.

On appeal, Abdus-Shahid challenges the dismissal of each of his claims. We address each issue in turn, reviewing de novo the district court's grant of the Rule 12(b)(6) motion to dismiss. Epps v. JP Morgan Chase Bank, N.A., 675 F.3d 315, 320 (4th Cir. 2012). To survive a motion to dismiss, a complaint must "provide enough facts to state a claim to relief that is plausible on its face," Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009),[3] meaning that it must "plead[] factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[P]laintiffs may proceed into the litigation process only when their complaints are justified by both law and fact." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

A. Federal Constitutional Claim

Abdus-Shahid contends the district court erred in dismissing his claim under the First and Fourteenth Amendments. Pointing to Maryland and federal case law discussing civilly recognized marriages and the fundamental right to marry, he asserts that the City's policy contradicts state law concerning

---

[3] We have removed internal alterations, citations, and quotations throughout this opinion, except as otherwise noted.

what it means to be married and it impermissibly divides marriage into two tiers, marriages that are entitled to coverage and marriages that are not. He submits that "intentionally or not," the City has "unconstitutionally burdened his free exercise of religion" by failing to recognize his religious-based marriage and that the district court's dismissal of this claim should be reversed.

We disagree with Abdus-Shahid; the district court did not err in dismissing this claim pursuant to Rule 12(b)(6). The arguments Abdus-Shahid makes do not address the proper analysis for a Free Exercise claim. Instead, he points to Maryland case law concerning when individuals are deemed to be "married." Those cases simply have no bearing on the matter before the Court, which is whether the City's policy violates the Free Exercise Clause. Similarly, his arguments relying on case law concerning same-sex civil unions and marriages ignore that those discussions occurred within the context of civil marriages. Yet again, these cases have no applicability to the Free Exercise claim Abdus-Shahid pursues.

Reviewed in light of the applicable Free Exercise Clause case law, Abdus-Shahid failed to articulate a constitutional claim based on his right to free exercise of religion. The First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend.

8

I.  This provision applies to states and localities through the Fourteenth Amendment.  See Booth v. Maryland, 327 F.3d 377, 380 (4th Cir. 2003) ("The Free Exercise Clause of the First Amendment, applicable to states through the Fourteenth Amendment, forbids the adoption of laws designed to suppress religious beliefs or practices unless justified by a compelling governmental interest and narrowly tailored to meet that interest.").  The Free Exercise Clause "does not," however, "relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)."  Employment Div. v. Smith, 494 U.S. 872, 879 (1990).  The City's requirement for a court-issued certificate before recognizing any marriage for purposes of health insurance coverage eligibility is just such "a valid and neutral law of general applicability."

Abdus-Shahid does not dispute that the City's policy requiring a civil marriage certificate to demonstrate eligibility for spousal health insurance coverage is generally applicable to City employees.  Instead, he maintains that the City's policy is not neutral toward religion because it has the effect of prohibiting Abdus-Shahid from enrolling Jones for insurance coverage despite her being his spouse based on an Islamic marriage ceremony.  But that is not the test for

9

neutrality. The Supreme Court has held that a law lacks neutrality if it "target[s] religious beliefs" or if its "object . . . is to infringe upon or restrict practices because of their religious motivation." Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993). The City's policy is silent as to religion or religious practice and thus is facially neutral. See id. The City allows individuals of all faiths or of no specific faith to enroll a spouse for coverage upon presenting a civil marriage certificate. In so doing, it simultaneously bars all employees from enrolling an individual as his or her spouse if that employee cannot provide the required documentation, regardless of the reason. See Liberty Univ., Inc. v. Lew, 733 F.3d 72, 99 (4th Cir. 2013) (observing that a neutral law of general applicability will have "no object that infringes upon or restricts practices because of their religious motivation and impose[] no burden . . . on conduct motivated [only] by religious belief"). And while facial neutrality does not end the analysis, Abdus-Shahid did not allege any facts from which it could be inferred that the policy was implemented with an improper motivation. See Lukumi Babalu Aye, 508 U.S. at 534 (observing that the Free Exercise Clause forbids "target[ing] religious conduct for distinctive treatment" through "subtle departures from neutrality" and "covert suppression of particular religious beliefs").

10

Because the City's policy is generally applicable and neutral toward religion it "need not be justified by a compelling governmental interest even if [it] has the incidental effect of burdening a particular religious practice." Id. at 531. Thus, as the Complaint failed to state a claim for the violation of the First and Fourteenth Amendments, the district court did not err in dismissing the claim.

## B. State Constitutional Claim

Abdus-Shahid next asserts the district court erred in dismissing his state constitutional claims for failure to comply with the notice provisions of Maryland's LGTCA. See Ransom v. Leopold, 962 A.2d 1025, 1030-31 (Md. Ct. Spec. App. 2008) (observing that the LGTCA's requirements apply to all torts, including constitutional ones). He contends that the LGTCA notice provisions do not apply to his claim because he only sought declaratory relief for the alleged violations of state law. Alternatively, he alleges he substantially complied with the LGTCA's requirements.

Under the version of the LGTCA applicable to Abdus-Shahid's claim, before suing the City for "unliquidated damages" he was required to provide the municipality written notice of his claimed injury within 180 days of that injury. Md. Code, Cts. & Jud. Proc. § 5-304 (2013). That notice must "state the time, place, and cause of the injury," "be given in person or by

11

certified mail, return receipt requested, bearing a postmark from the [post office]," and, in the case of the City, be given to the City Solicitor. Id. Abdus-Shahid does not allege that he, in fact, fulfilled these specific requirements.

The district court did not err in concluding that the LGTCA's notice provisions apply to Abdus-Shahid's state-law claims because the Complaint specifically asks, in relevant part, "that the Court determine the respective rights and remedies of the parties hereto with respect to the[]" state constitutional claim. App. 11, ¶ 33 (emphasis added). Elsewhere, the Complaint plainly contemplated an award of damages to compensate for the sums Abdus-Shahid was having to pay for out-of-pocket medical expenses. See App. 8, ¶ 18 ("Plaintiffs are currently expecting and, as a result of the City's refusal to recognize their marriage, Baiyina Jones is without health insurance coverage. As a result, Plaintiffs are incurring out-of-pocket healthcare expenses and expect to continue to incur such expenses until Baiyina Jones is properly insured."); App. 10, ¶ 30 (expressly incorporating the allegation in paragraph 18 into the state law claim); see also App. 12-13 (plea for relief, containing a free-standing request for "[a] judgment for monetary damages"). Moreover, as the district court correctly surmised from these allegations, Abdus-Shahid is "requesting that the City reinstate Jones's health

12

insurance and pay the City's portion of Jones's premiums," a request that also involves more than "solely . . . declaratory relief." App. 38.

Based on the foregoing, the Complaint contemplates the possibility of more than solely declaratory relief related to the state law claim. As such, the district court did not err in concluding that Abdus-Shahid was required to comply with the notice provision of the LGTCA prior to bringing his state law claim and that he did not do so. Cf. Rounds v. Md.-Nat'l Capital Park & Planning Comm'n, 109 A.3d 639, 646 n.10 (Md. 2015) (concluding plaintiffs sought unliquidated damages -- and thus fell "under the purview of the LGTCA" -- despite labelling their claim as one for "Declaratory Judgment" -- because they sought compensatory, statutory, and punitive damages arising from the alleged violation).

Abdus-Shahid does not contend he strictly complied with the LGTCA's provisions. Instead, Abdus-Shahid argues the district court erred by not considering whether he had substantially complied with the LGTCA's provisions. He asserts that had the district court done so, it would have concluded he had substantially complied by filing the EEOC charge and therefore could proceed with the state law claim.

To be sure, Maryland courts do not require strict compliance with the LGTCA's notice provisions. See Faulk v.

13

<u>Ewing</u>, 808 A.2d 1262, 1275 (Md. 2002) ("[W]here . . . [a] claimant provides the local government, through the unit or division with the responsibility for investigating [such] claims against that local government, or the company with whom the local government or unit has contracted for that function, the information required by § 5-304(b)(3) to be supplied, who thus acquires actual knowledge within the statutory period, the . . . claimant has substantially complied with the notice provisions of the LGTCA."). That legal principle has no effect here, however, because Maryland courts also require plaintiffs to plead their strict or substantive compliance with the LGTCA as part of their state-law claims. <u>See</u> <u>Hansen v. City of Laurel</u>, 25 A.3d 122, 137 & n.16 (Md. 2011). Failure to do so makes the claim "subject to a motion to dismiss . . . based on a failure to state a claim upon which relief can be granted." <u>Id.</u> at 137. Here, the Complaint fails to plead any compliance with the LGTCA. Although Abdus-Shahid attached a copy of the EEOC charge to his Complaint, he failed to allege any facts directly in the Complaint from which his compliance with the LGTCA -- substantial or otherwise -- could be gleaned.

In any event, we readily conclude that the documentation Abdus-Shahid attached to the Complaint does not constitute substantial compliance under Maryland law. The substantial compliance exception is "narrow," <u>Huggins v. Prince George's</u>

14

County, 683 F.3d 525, 538 (4th Cir. 2012), and must be demonstrated with respect to each of the LGTCA's requirements, see Moore v. Norouzi, 807 A.2d 632, 643 (Md. 2002).

Here, the EEOC charge alleges religious discrimination in employment practices, in violation of Title VII, but it does not necessarily follow that claim adequately alerted the City to a potential claim based on violations of Maryland's constitutional guarantees of religious freedom and due process. Faulk, 808 A.2d at 1272 (observing that substantial compliance requires fulfillment of the notice requirement's purpose, which is "to apprise [the] local government of its possible liability" such that it can, among other things "ascertain the character and extent of [its] responsibility"). Moreover, because the charge alleges discrimination that began in November 2013 and the charge was not filed until August 12, 2014, it was not provided to the City until well after the 180-day period in which notice is to be provided under the LGTCA. Abdus-Shahid does not offer any explanation for this delay, nor does he claim he should be excused from the statutory deadline requirement. Cf. Rounds, 109 A.3d at 652-54 (analyzing whether "good cause" excused plaintiff's failure to comply with the LGTCA's notice deadline). On this record, the EEOC charge was not sufficient to constitute substantial compliance with all of the LGTCA's requirements. As

15

such, the district court did not err in dismissing Abdus-Shahid's state-law claims for failure to comply with the LGTCA.

## C. Title VII Claim

The final issue Abdus-Shahid raises on appeal challenges the district court's dismissal of his Title VII claim for failure to exhaust administrative remedies. He maintains that "the City's policy disparately impacts [him], and other religiously observant employees and their families, by requiring that they either engage in conduct that interferes with their religious beliefs or forego the privileges ordinarily accorded to married people." Appellants' Opening Br. 16. He argues that this claim was adequately alleged in his EEOC charge, which referred to "religious discrimination," and he urges that it requires too much of the non-lawyers filling out EEOC charges to require more than a layman's explanation of the conduct at issue.

Title VII authorizes two causes of action against employers: disparate treatment (intentional discrimination) and disparate impact. EEOC v. Abercrombie & Fitch Stores, Inc., 575 U.S. __, 135 S. Ct. 2028, 2032 (2015). Although they are similar in their objectives, each cause of action has different elements. A disparate treatment claim requires proof of discriminatory motive, "although [that impermissible motive] can in some situations be inferred from the mere fact of differences

16

in treatment." <u>Int'l Bhd. of Teamsters v. United States</u>, 431 U.S. 324, 335 n.15 (1977). A disparate impact claim, in contrast, does not require proof of discriminatory motive. <u>Id.</u> Instead, disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." <u>Id.</u>

In order to promote voluntary compliance with the law, Title VII claimants must pursue their administrative remedies before filing a lawsuit. <u>Balas v. Huntington Ingalls Indus.</u>, 711 F.3d 401, 406-07 (4th Cir. 2013). They do so by filing a "charge" with the EEOC "notif[ying] the charged party of the asserted violation" and "bring[ing] the charged party before the EEOC." <u>Id.</u> at 407. "[A] federal court may only consider those allegations included in the EEOC charge." <u>Id.</u> Any other claims that "would naturally have arisen from an investigation" are procedurally barred and the court lacks jurisdiction to consider them. <u>Id.</u>

On appeal, as he did in opposing the motion to dismiss, Abdus-Shahid repeatedly disavows raising a disparate treatment claim in his Complaint. <u>E.g.</u>, Appellants' Opening Br. 9 ("Abdus-Shahid's claim is based upon disparate impact discrimination, not disparate treatment discrimination."); Appellants' Opening Br. 16 ("Appellants do not allege that the

17

City deliberately targeted Islam for attack."). Instead, he maintains that he is relying solely on disparate impact discrimination. E.g., App. 33 ("This is a case of disparate impact discrimination."); Appellants' Opening Br. 16 ("Appellants . . . allege that the City's policy disparately impacts them[.]"). In light of Abdus-Shahid's clear position from the opposition to motion to dismiss stage and through to appeal, we will not address any arguments related to a disparate treatment claim because that is a cause of action he represents he is not seeking to bring.

Turning to whether Abdus-Shahid's disparate impact claim can survive the motion to dismiss stage, we conclude it cannot. Even construing the EEOC charge broadly, we agree with the district court that it fails to assert a disparate impact claim. "Central to proof of a prima facie case under th[at] theory" is proof of a policy or practice, "which, though facially neutral or even benign in actual purpose, nevertheless imposes a substantially disproportionate burden upon a claimant's protected group as compared to a favored group within the total set of persons to whom it is applied." Wright v. Nat'l Archives & Records Serv., 609 F.2d 702, 711 (4th Cir. 1979). Abdus-Shahid's allegations in the EEOC charge sound as a disparate treatment or intentional discrimination claim rather than a disparate impact claim: he claims he has been denied insurance

18

and believes that he is being "discriminated against . . . because of [his] religion, Muslim." App. 18. Critically, the EEOC charge does not identify any policy (neutral or otherwise) being challenged as discriminatory in its effect, and, in fact, it asserts Abdus-Shahid had "been given no explanation for [his] employer's action." App. 18 (emphasis added).

Abdus-Shahid also did not assert any facts that would allow a conclusion that Muslims were being disproportionately impacted by the City's actions. While he claims another employee experienced the "same issue," that allegation is vague and does not suggest anything more than discrete discriminatory acts. E.g., Wright, 609 F.2d at 712 ("The policy or practice contemplated by disparate impact doctrine consists of more than the mere occurrence of isolated or . . . sporadic discriminatory acts, having reference instead to an employer's standard operating procedure[; it concerns] the regular rather than the unusual practice.").[4] Lastly, in his brief on appeal, Abdus-

---

[4] Abdus-Shahid's brief goes even farther in suggesting that the City's policy does not disparately impact Muslims, but rather affects anyone who elects not to obtain a civil marriage certificate for whatever reason. E.g., Appellants' Opening Br. 15 ("Any religious person who chooses [to forego the state licensing requirement for marriage] will, upon accepting employment with the City of Baltimore, be impacted by the City's discriminatory health insurance coverage policy."). Even assuming that Abdus-Shahid could assert a disparate impact claim on behalf of "devout religious adherents" of multiple faiths, Abdus-Shahid offered no contentions in his EEOC charge as to any
(Continued)

19

Shahid contends that the "heart" of his disparate impact claim is a failure to accommodate, Appellants' Opening Br. 17, but the EEOC charge does not provide any information suggesting that to be the case. To be clear, the problem is not -- as Abdus-Shahid incorrectly suggests the district court held -- that his EEOC charge lacked any specific legal terminology. Abdus-Shahid is correct that "the exhaustion requirement should not become a tripwire for hapless plaintiffs [and that] we may not erect insurmountable barriers to litigation out of overly technical concerns." Sydnor v. Fairfax Cty., 681 F.3d 591, 594 (4th Cir. 2012). Rather, the problem is that the words used in the EEOC charge do not correlate to the sort of assertions and facts from which a future cause of action based on disparate impact can be discerned. See, e.g., Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005) (observing "the factual allegations in the administrative charge [must be] reasonably related to the factual allegations in the formal litigation" to satisfy the exhaustion requirement).

Abdus-Shahid thus failed to exhaust his administrative remedies with respect to a disparate impact claim under Title VII and the district court did not err in dismissing this claim.

effect on such non-Muslims who also do not possess a civil marriage certificate.

20

See, e.g., <u>Burgis v. N.Y.C. Dep't of Sanitation</u>, 798 F.3d 63, 71 (2d Cir. 2015) (affirming dismissal of disparate impact claim for failure to exhaust where the EEOC charge "complain[ed] of individualized disparate treatment"); <u>Pacheco v. Mineta</u>, 448 F.3d 783, 792 (5th Cir. 2006) (concluding plaintiff failed to exhaust remedies as to a disparate impact theory where the EEOC charge "facially alleged disparate treatment," "identified no neutral employment policy," and "complained of past incidents of disparate treatment only").

## III.

For the aforementioned reasons, the judgment of the district court is

<u>AFFIRMED</u>.

21