*Mora v. NY State Unified Ct. Sys.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of March, two thousand twenty-six.

PRESENT:
        DENNY CHIN,
        SUSAN L. CARNEY,
        RICHARD J. SULLIVAN,
           *Circuit Judges.*

_____

FRANK MORA,

        *Plaintiff-Appellant*,

        v.                                  No. 23-7231

NEW YORK STATE UNIFIED COURT SYSTEM, OFFICE OF COURT ADMINISTRATION, ANNE MINIHAN, LAWRENCE MARKS, JUSTIN BARRY, ROSEMARY MARTINEZ-BURGES, JENNIFER DILALLO, SHAWN KERBY, KEITH MILLER,

LINDA DUNLAP-MILLER, SCOTT MURPHY, MICHELLE SMITH, JOHN SULLIVAN, DAN WEITZ, NANCY BARRY, TAMIKO AMAKER,

*Defendants-Appellees.*

_____

| | |
|---|---|
| **For Plaintiff-Appellant:** | MICHAEL H. SUSSMAN, Sussman & Goldman, Goshen, NY. |
| **For the Individual Defendants -Appellees:** | KARTIK NARAM (Barbara D. Underwood, Solicitor General, Mark S. Grube, Senior Assistant Solicitor General, Anthony R. Raduazo, Assistant Solicitor General, *on the brief*), *for* Letitia James, Attorney General for the State of New York, New York, NY. |
| **For the Remaining Defendants -Appellees:** | MICHAEL SIUDZINSKI (David Nocenti, Robyn L. Rothman, *on the brief*), New York State Unified Court System, Office of Court Administration, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Vincent L. Briccetti, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the September 19, 2023 judgment of the district court is **AFFIRMED**.

Frank Mora, a city judge in Poughkeepsie, New York, appeals the dismissal of his second amended complaint against New York State's Unified Court System ("UCS"), its Office of Court Administration ("OCA"), and various individuals

employed there on the grounds of mootness and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In a nutshell, Mora alleges that Defendants denied his request for a religious exemption from UCS's COVID-19 vaccination mandate, which resulted in his exclusion from entering the city courthouse where he typically presided. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

We review *de novo* a district court's dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6), "accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff." *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 503 (2d Cir. 2022). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and which would "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

I.    **Mora's Section 1983 Claim against UCS and OCA.**

The district court properly dismissed Mora's claims against UCS and OCA for allegedly violating his First Amendment rights, brought pursuant to 42 U.S.C.

§ 1983, because both entities are immune from suit under the doctrine of sovereign immunity. The Eleventh Amendment to the United States Constitution bars suits in federal court by private parties against a state, absent the state's consent to suit or an express statutory waiver of immunity enacted by Congress. *See* U.S. Const. amend. XI; *see also Tennessee v. Lane*, 541 U.S. 509, 517 (2004). Eleventh-Amendment immunity extends to "state agents and state instrumentalities that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (internal quotation marks omitted).

We have previously concluded that the "New York State Unified Court System is unquestionably an 'arm of the State'" and is therefore "entitled to Eleventh Amendment sovereign immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009). The same is true of OCA, which is simply a subdivision of UCS. *See Posr v. Ct. Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) ("The State Office of Court Administration is an arm of the state and therefore immune."). In fact, Mora's complaint identifies UCS and OCA as a single defendant, which he describes as a state agency. *See* J. App'x at 16.

We have also recognized that New York has not consented to suits against UCS and OCA in this context. *See Gollomp*, 568 F.3d at 357 n.2 (noting that New

4

York has waived sovereign immunity "only [for suits brought in New York's] Court of Claims." (quoting *Morell v. Balasubramanian*, 70 N.Y.2d 297, 300 (1987))); *see also Posr*, 180 F.3d at 414. Indeed, we have observed that "every court to consider the question of whether the New York State Unified Court System is an arm of the State has concluded that it is, and is therefore protected by Eleventh Amendment sovereign immunity." *Gollomp*, 568 F.3d at 366.

We have likewise concluded that Congress has declined to enact an express statutory waiver of immunity against state court systems for actions brought under section 1983. *Id.* at 367. Put simply, "the Eleventh Amendment renders the Unified Court System Office of Court Administration and the State immune from suit . . . because no express override of State statutory authority has been enacted by Congress in association with [section] 1983." *Id.* (alteration adopted and internal quotation marks omitted).

In any event, Mora's claim for prospective injunctive relief here is clearly moot, since UCS vacated its vaccine mandate in February 2023 and since Mora has been reinstated to full in-person duties. J. App'x at 270–71. We "cannot enjoin what no longer exists." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 393 (2d Cir. 2022).

5

Nor has Mora shown that his request for prospective relief falls within the exception for conduct that is "capable of repetition, yet evading review," which applies "only in exceptional situations," where: "(1) the plaintiff [has] a reasonable expectation that it will be subject to the same challenged action again, and (2) the challenged conduct [is] of too short a duration to be fully litigated before its cessation." *Id.* at 395 (alteration adopted and internal quotation marks omitted). In other words, "mere speculation that the parties will be involved in a dispute over the same issue" at some time in the future is not enough. *Id.* at 396 (internal quotation marks omitted). Because Mora has not alleged an ongoing violation of federal law that requires prospective relief, the Eleventh Amendment bars his claims against UCS and OCA. *See Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000) ("[T]he Supreme Court has declined to extend the reasoning of *Ex Parte Young* to claims for retrospective relief.").[1]

---

[1] Mora also requested injunctive relief compelling Defendants to (1) reverse the denial of his exemption request, and (2) "provide him an exemption from any and all [COVID-19] vaccination mandates retroactive to the date he was denied." J. App'x at 31–32. But the district court properly dismissed the request for injunctive relief as moot, since the end of the COVID-19 pandemic "makes it impossible for the court to grant any effectual relief whatever to [a Plaintiff]" even if he were to prevail on the merits. *County of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (internal quotation marks omitted).

## II.     Mora's Title VII Claim.

By contrast, Congress *has* abrogated state sovereign immunity for claims under Title VII of the Civil Rights Act of 1964.   *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 452–53, 457 (1976).   Nevertheless, because Mora – as a city judge – falls within Title VII's exception for "an appointee on the policy making level," his Title VII claim against UCS and OCA also fails.   42 U.S.C. § 2000e(f).

"[T]he existence of an employer-employee relationship is a primary element of Title VII claims."   *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 838 (2d Cir 2022) (internal quotation marks omitted).   But while Title VII defines "employee" broadly to mean "an individual employed by an employer," it specifically excludes:

> [a]ny person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

42 U.S.C. § 2000e(f).

The Supreme Court has held that a state judge appointed by an elected official (there, the Governor) was an appointee on the policymaking level and therefore not an employee protected under the Age Discrimination in

Employment Act ("ADEA") from the Missouri Constitution's mandatory retirement provision for judges. *See Gregory v. Ashcroft*, 501 U.S. 452, 464–67 (1991). Because the ADEA and Title VII use identical statutory definitions of the term "employee," *compare* 29 U.S.C. § 630(f), *with* 42 U.S.C. § 2000e(f), *Gregory*'s holding also applies in this case. *See Butler v. N.Y. State Dep't of L.*, 211 F.3d 739, 747 (2d Cir. 2000) ("rely[ing] on" ADEA caselaw for "the analysis of the definition of employee" under Title VII because Congress, when amending the ADEA, "adopt[ed] verbatim the definition of employee found in Title VII").

Like the judge in *Gregory*, Mora – as a city judge appointed by an elected official (in this case, his city's mayor) – falls within the exception for an "appointee on the policy making level" under Title VII. We therefore affirm the district court's dismissal of Mora's Title VII claim against UCS and OCA because it too fails to state a viable claim.

## III. Mora's Fourteenth Amendment Claim.

Mora also brought a Fourteenth Amendment Equal Protection claim, under section 1983, against the individual members of UCS's "Vaccine Exemption Committee," alleging that they denied his request for a religious exemption from the vaccine mandate on discriminatory grounds. App'x at 16, 31. In order to

8

state a selective-enforcement claim under the Equal Protection Clause, a plaintiff must plausibly allege: "(1) the person, compared with others similarly situated, was selectively treated; and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Crowley v. Courville*, 76 F.3d 47, 52–53 (2d Cir. 1996) (alteration adopted and internal quotation marks omitted). The district court concluded that Mora had failed to plausibly allege either element. We agree.

A comparator is similarly situated to the plaintiff when "the plaintiff's and comparator's circumstances . . . bear a reasonably close resemblance." *Hu v. City of New York*, 927 F.3d 81, 96 (2d Cir. 2019) (internal quotation marks omitted). Mora identifies several other Catholic UCS employees who received exemptions under the vaccine mandate, but he includes no specific facts about their exemption applications. *See* J. App'x at 21–22, 24–25; *see also Burgis v. N.Y. City Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015) (dismissing equal protection claim as "conclusory" where complaint failed to allege "meaningful specifics of the alleged difference in qualifications" between employees who had received promotions and the plaintiffs). Mora also generally alludes to 500 UCS employees who

9

received religious exemptions on the basis of their sincerely held religious beliefs against vaccinations, *see* J. App'x at 26, 31, but he again provides no factual allegations indicating whether or why those individuals are similarly situated to him.

Nor does Mora allege that he was treated differently from his comparators *on account of* his religious affiliation. Mora concedes that the VEC Defendants routinely granted religious exemptions to other Catholics and people of different faiths who opposed the COVID vaccines on religious grounds. *Id.* at 25–26, 31. Since those who shared Mora's religious convictions received the very exemptions that he sought, it is not plausible to infer that the VEC Defendants denied Mora's request for an exemption on the basis of something *other than* his Catholic faith. *See Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015) (dismissing Equal Protection claim based on the denial of a religious exemption purportedly due to plaintiffs' Catholic faith where complaint acknowledged that other Catholics were granted an exemption). Because Mora alleges no additional facts suggesting a discriminatory motive for the denial of his exemption, he has not plausibly alleged a claim under the Fourteenth Amendment's Equal Protection Clause.

## IV.  Mora's Free Exercise Claim.

Mora's as-applied First Amendment Free Exercise claim fares no better.   In *New Yorkers for Religious Liberty, Inc. v. City of New York*, we reversed the dismissal of plaintiffs' as-applied claims, concluding that plaintiffs plausibly alleged that the City's vaccine-exemption panel impermissibly denied their respective exemptions because they were "too personal" or "idiosyncratic to be religious in nature." 125 F.4th 319, 335 (2d Cir. 2025); *see id.* at 332 (permitting consideration of whether a vaccine-exemption applicant's "religious beliefs are sincerely held," but forbidding examination of "the verity of an adherent's religious beliefs" (internal quotation marks omitted)).   Unlike the complaint in that case, however, Mora's own pleadings reflect that more than 500 other judges and employees – including Catholics with beliefs *identical* to Mora's – received exemptions from the vaccine mandate.   *See* J. App'x at 26; *see also id.* at 25, 31.   Those allegations belie Mora's assertion that the Individual Defendants' denial of his exemption request was based on hostility to his religious beliefs, as opposed to his failure to follow the procedures established for religious exemptions.   *Compare id.* at 116 (UCS's "Request for Religious Exemption from COVID-19 Vaccination" policy, which provides:   "If a judge or employee refuses to provide the information necessary

11

for UCS to review and consider their request for religious exemption, they will be required to comply with [the vaccine mandate].”), *with id.* at 149 (Mora's incomplete response to OCA's request for additional information regarding his religious beliefs).   We therefore see no error in the district court's dismissal of Mora's as-applied Free Exercise claim against the Individual Defendants.

**V.      Mora's First Amendment Retaliation Claim.**

Finally, Mora contends that the chief administrative judge, Lawrence Marks, retaliated against him on the basis of his “religiously based refusal to vaccinate,” Mora Br. at 29, when he referred Mora to a disciplinary body.   To state a claim for First Amendment retaliation, a public-employee plaintiff must plausibly allege that “(1) he engaged in speech or activity that was protected by the First Amendment; (2) he suffered an adverse employment action; and (3) a causal connection existed between the adverse action and the protected activity.” *Specht v. City of New York*, 15 F.4th 594, 600 (2d Cir. 2021) (citing *Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015)).   Although Mora insists that he was disciplined for seeking a religious exemption, the pleadings again undercut that assertion, revealing that the disciplinary referral was made only *after* (1) Mora failed to follow the procedures required to obtain a vaccine exemption, *compare*

J. App'x at 116, *with id.* at 149, and *after* (2) he refused to comply with the then-operative vaccine mandate following the denial of his request for a religious exemption, *see id.* at 64–65. Importantly, Mora does not allege that everyone – or anyone – who merely requested a religious exemption was referred for discipline; nor does he allege that individuals who refused to get vaccinated after the denial of a religious exemption were treated differently (and worse) than those who refused to get vaccinated after the denial of a non-religious exemption. Without such allegations, Mora cannot establish a causal link between his request for a religious exemption (which would on its face qualify as protected First Amendment activity) and his adverse employment action, *i.e.*, his referral to the disciplinary body. We therefore affirm the district court's dismissal of this claim as well.

* * *

We have considered Mora's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13